BREAUX, C. J.
The appellant was surety on defendants’ bonds. He seeks to have the judgment rendered against him as surety reversed.
The amount of each of the two bonds is $250.
. The defendants, Eugene Bertrand and Odette Duval, were charged in an affidavit, in the First city criminal court, with felon-iously living in open concubinage, in violation of Act No. 87, p. 105 of 1908, one being a colored man, the other a white woman.
A subpoena was issued on motion of the district attorney, and served on defendants and their surety.
At the time fixed by the court, the defendants failed to appear. Thereafter, in the court in which it was incumbent upon the defendants to appear, the court ordered Joseph Bonomo, surety, who was present in court, to procure the presence of the defendants into court.
This he failed to do, and thereupon the district attorney offered the required evidence to forfeit the bond, which was admitted. Upon this evidence a judgment was rendered (again on motion of the district attorney) against the defendants and their surety in solido for an amount of $250 in each case.
The law under which the defendants were prosecuted was approved on the 1st of July, 1908, and promulgated in the official journal on the 4th of that month. The affidavit was made against the defendants on the 27th day of July, 1908, and the bail bond was furnished the next day.
Counsel for the bondsman in due time presented a motion before the court to set aside the judgment of forfeiture.
The complaint of the surety is, in substance, that the judge originally did not issue a written order to the sheriff to accept the bond.
The second ground of attack of the judgment was that the bond upon which it was based does not state an offense known to the law; and, lastly, the bondsman urged that the law before cited had not been promulgated at the date that the prosecution was instituted by reason that the law was promulgated in the official journal on the 4th of July.
We take up the first point above stated for decision; that is, the want of an order to the sheriff by the court.
The amount of the bond was fixed by the *859 court At the time that the bond was executed, the defendants were in charge of the sheriff. It is usual for the court to direct the sheriff to accept the bond. We have no good reason to infer that it was otherwise in this case.
There is a pertinent decision on this point State v. Hendricks, 40 La. Ann. 724, 5 South. 24.
We insert here the pertinent part of the text:
“It is also contended that the bond was not ordered or accepted by the justice of the peace, and that the sheriff accepted the bond without a written order from the magistrate. The minutes of the justice of the peace court show •that the bond was ordered and the amount thereof fixed by the magistrate, and his testimony and that of the sheriff both show that ■the latter was authorized by the justice of the peace to accept the bond. A verbal order to that effect was sufficient, and no authority can be invoked to show that a written order would be necessary to legalize such ■ a bond. But as ¡several of these objections involve only alleged irregularities, the surety is estopped from urging them by the fact, as shown by the sheriff’s return and also by the minutes of the magistrate’s court, that the accused was in actual ■custody when the bond was executed, and that he was thereby released. Having reaped the .advantages and realized the object of the bond, the parties cannot be allowed to avoid its effect or be heard to gainsay the regularity of the proceeding.”
State v. Ansley, 13 La. Ann. 299; State v. Badon, 14 La. Ann. 783; State v. Canady, 16 La. Ann. 141; State v. Nicol, 30 La. Ann. 628. This latter portion of the text relating to the estopped situation in which the surety is placed we will have occasion to refer to again later. The facts bring the case within the terms of another decision in point, viz., Louisiana Society for the Prevention of Cruelty to Children v. Moody, 52 La. Ann. 1815, 28 South. 224.
The case of State v. Badon was evidently well considered, and the court quoted approvingly from State v. Ansley, 13 La. Ann. 299, the following:
“We think that, inasmuch as the accused was in the custody of the sheriff or his deputies, it may fairly be inferred that the sheriff and
his deputies (no other persons being mentioned) were intended as the proper persons to take the bond, and that neither the accused nor his sureties, who have put this construction upon the order of the court for the bond, and have secured his discharge upon this construction, can now be permitted to gainsay this conclusion, upon which they have acted.”
The proceedings of the magistrate, the court said, were extremely irregular in an important matter, and yet maintained the forfeiture.
This brings us to a consideration of the second proposition upon which learned counsel insists as ground to justify us in setting aside the judgment. This proposition is that the bond does not describe an offense known to the law.
This proposition of defendant is broad enough as stated in his pleading, and, if sustained by the facts, it would have the effect of striking all the proceedings with nullity.
In passing upon this point, we will state that the defendants were charged with “violating Act No. 87, p. 105, of 1908,” known as the “Concubinage Act.”
In disposing of this complaint, directed by the surety against the judgment of forfeiture, we in the first place refer to the statute which the defendants were charged with having violated. It in terms denounces concubinage between a person of the Caucasian or white race and a person of the negro or black race, and makes it felony, and directs that whoever shall be convicted shall be sentenced to imprisonment, at the discretion of the court, for a term not less than one month or over one year, with or without hard labor.
The statute is plain enough. When the bond was taken to secure the presence of the defendants charged with its violation, it directly included “the accused of different races,” within its terms, for violating the statute by living in open concubinage. The bond could refer to no other concubinage than that charged in the affidavit. It- also is manifest that it relates to the statute it *861 self, cited supra, the only statute of the kind upon the statute books.
From that point of view, the surety must have had knowledge of just what he was doing. He does not assert that he had no knowledge when he became party to the bond as surety.
The charge of having violated the statute is equivalent to the charge of having committed an offense known to the law.
A question very similar was considered in State v. Tennant, 30 La. Ann. 852.
The defendants in this last case were indicted for murder. The bond was forfeited. They were placed under bond for shooting with intent to kill. The court held that the validity' of a bail bond is not affected by an indictment for a higher grade of crime than that expressed in the bond. The accused was bound to appear at court to answer to a specific charge, and not to depart without leave of the court.
The accurate description of the offense required in drafting an indictment or in preparing an information is not required in a bail bond.
Although the decision last cited is not directly pertinent, it shows that a substantial compliance is all. that is necessary.
In State v. Ansley, 13 La. Ann. 299, as in the case in hand, the accused was by the condition of the bond required to answer whenever called upon. The accused in that case was indicted for uttering and publishing as true a certain forged counterfeit order for the payment of money. In the bond he bound himself to appear to answer to the charge of forgery. As there was no charge of forgery, technically speaking, pending against him, the contention was that there could be no forfeiture of the bond. The court held to the contrary.
In State v. Loeb, 21 La. Ann. 599, the condition of the bond was that the prisoner should not depart without leave of the court. The sureties were held bound,' although the offense was not described correctly in the body of the bond.
We stated above that we would return to the proposition that the surety could not raise the question he attempts to invoke because his principals were concluded by their own acts.
A similar view was expressed not long since in State v. Arledge and Posey, Surety, 48 La. Ann. 774, 19 South. 761.
This case in some respects is very similar to the case in State v. Moody (Cage, Surety), 52 La. Ann. 1815, 28 South. 224, alluded to above as directly in point.
The court states in the reasons for judgment that the amount of the bond was deposited with the surety. On appeal, the statement was not denied. Besides, the court a qua states, as part of the ruling, that it was alleged and admitted on the trial of the pending rule in open court that the fugitives had given to the surety an amount of money to secure their liability under the bond. The surety thus protected has no real interest in the result.
In the bill of exceptions taken to the ruling of the trial judge in forfeiting the bond, the following appears:
“The bill includes a bail order upon which the sheriff acted herein. It also is made part of this bill of exceptions; the ruling of the court on the motion herein'filed, being in writing is also, made part of this bill of exceptions, together with the note of evidence and notice served on surety, thus bringing up the evidence of a fact.”
We must decline to set aside the judgment. The surety cannot raise the technical defenses such as could have been raised by the defendants. There are some objections which must be taken at the earliest opportunity, else they will be waived. Besides, the 52 La. Ann. and 28 South, case disposes of the case entirely.
The want of legal publication or promulgation of the statute is another of defendant’s grounds.
*863 The laws relating to the publication of a statute are not subject to the rule applying in legal proceedings or in any matter of administering or enforcing the law.
Defendants urge that Sundays and legal holidays should' be deducted from the twenty days.
We do not think that we are authorized to so decree.
Fellman v. Mercantile & Marine Ins. Co., 116 La. 723, 41 South. 49, is to the contrary. Moreover, the Constitution does not exclude holidays. Why should we? The publication on the 4th of July was not an illegality. Laws .may be promulgated on all days except Sundays. The statement is included in-cidently, for, as before stated, the 52 La. Ann. and 28 South, case is controlling.
For reasons assigned, the law and the evidence being in favor of plaintiff and against the defendants, the judgment appealed from is affirmed at appellant’s costs.
MONROE, PROVOSTY, and LAND, JJ., concur in the decree.